**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**ORDER**

AND NOW, this _____ day of ________, 2025, upon consideration of the Motion of Defendant Timothy Toombs to Dismiss the Complaint, and any opposition thereto, it is hereby ORDERED that Defendant Toombs' Motion to Dismiss is GRANTED and the Complaint as against Toombs is DISMISSED with prejudice.

BY THE COURT:

____________________________________
Honorable Wendy Beetlestone

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**MOTION OF DEFENDANT TIMOTHY TOOMBS**
**TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Timothy Toombs ("Toombs") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint on the grounds that the Complaint fails to state a claim against Toombs. In support of this Motion, Toombs incorporates by reference his supporting Brief, filed contemporaneously herewith.

WHEREFORE, Toombs respectfully requests that this Court enter an order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

Dated: November 10, 2025

*s/ CS D'Angelo*
Christopher Scott D'Angelo (PA ID No. 28463)
Kimberly L. Sachs (PA ID No. 325989)
**MONTGOMERY MCCRACKEN**
**WALKER & RHOADS LLP**
1735 Market Street, 19th Floor
Philadelphia, PA 19109
215.772.1500
*Counsel for Defendant Timothy Toombs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**BRIEF IN SUPPORT OF MOTION OF**
**DEFENDANT TIMOTHY TOOMBS TO DISMISS THE**
**COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 2
A. Toombs' Employment at Simpay ........ 2
B. PayCompass Hires Toombs ........ 3
C. Simpay's Claims Against Toombs ........ 4
III. ARGUMENT ........ 4
A. Standard for a Motion to Dismiss ........ 4
B. Simpay Has Failed to State a Breach of Contract Claim Against Toombs. ........ 5
C. The Gist of the Action Doctrine Bars Plaintiff's Breach of Fiduciary Duty Claim. ........ 7
D. Simpay Has Failed to State a Claim for Misappropriation of Trade Secrets. ........ 9
i. The gist of the action doctrine bars the misappropriation claims. ........ 10
ii. Simpay has failed to sufficiently identify its alleged trade secrets. ........ 11
iii. Simpay has not alleged misappropriation. ........ 14
IV. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 4, 5, 6, 13

*Batoff v. Charbonneau*,
No. 12-cv-05397, 2013 WL 1124497 (E.D. Pa. March 19, 2013) .................... 7

*Bioquell, Inc. v. Feinstein*,
No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) .................... 16

*Bohler-Uddeholm Am.,Inc. v. Ellwood Grp., Inc.*,
247 F.3d 79 (3d Cir. 2001) .................... 11

*Brader v. Allegheny General Hosp.*,
64 F.3d 869 (3d Cir. 1995) .................... 6

*Brightview Landscapes, LLC v. Iatzko*,
No. 25-2013-KSM, 2025 WL 1710054 (E.D. Pa. June 18, 2025) .................... 5, 6

*Brown & Brown, Inc. v. Cola*,
745 F. Supp. 2d 588 (E.D. Pa. 2010) .................... 7, 9

*Certainteed Ceilings Corp. v. Aiken*,
No. 14-3925, 2015 WL 410029 (E.D. Pa. Jan. 29, 2015) .................... 7, 10

*Chandler v. La-Z-Boy, Inc.*,
621 F. Supp. 3d 568 (E.D. Pa. 2022) .................... 15

*Estate of Rudi v. City of Phila.*,
No. 24-cv-5904, 2025 WL 2784227 .................... 4

*Heritage Fence Co. v. Malin*,
No. 24-2650, 2024 WL 5047468 (E.D. Pa. Dec. 9, 2024) .................... 12, 14, 15

*Herley Industries, Inc. v. R Cubed Engineering, LLC*,
No. 5:20-cv-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021) .................... 11, 16

*Hirtle Callaghan Holdings, Inc. v. Thompson*,
No. 18-2322, 2022 WL 2048656 (E.D. Pa. June 7, 2022) .................... 7, 8, 9

*Lithero, LLC v. AstraZenca Pharmaceuticals LP*,
No. 19-2320-RGA, 2020 WL 4699041 (D. Del. Aug. 13, 2020) .................... 12

**Page(s)**

*Mallett & Co. v. Lacayo,*
16 F. 4th 364 (3d Cir. 2021) .......... passim

*Oakwood Laboratories LLC v. Thanoo,*
999 F.3d 892 (3d Cir. 2021).......... passim

*PDC Machines Inc. v. Nel Hydrogen A/S,*
No. 17-5399, 2018 WL 3008531 (E.D. Pa. June 15, 2018).......... 14

*Preston Group, LLC v. Customers Bank,*
No. 5:20-cv-06516, 2021 WL 3562893 (E.D. Pa. Aug. 12, 2021).......... 11

Statutes

18 U.S.C. § 1836-39 .......... 9

Rules

Federal Rule of Civil Procedure 12(b)(6) .......... 4

## I. INTRODUCTION

Plaintiff Alpha Card Services LLC d/b/a Simpay ("Simpay") brings the instant action against its former employee, Timothy Toombs ("Toombs"), claiming that Toombs breached his employment agreement and fiduciary duties and violated federal and Pennsylvania trade secret laws by disclosing Simpay's alleged trade secrets to his new employer, Defendant PayCompass LLC ("PayCompass"). What Simpay's Complaint lacks, however, is any factual averment that pushes Simpay's claims against Toombs from the realm of speculation into the realm of plausibility. Under even the most liberal pleading standards, Simpay must allege facts that raise a plausible inference of liability. Simpay's legal conclusions, threadbare allegations, and mere recitation of the elements fall woefully short of this well-established pleading requirement.

More important, Simpay's tort claims against Toombs are barred by Pennsylvania's gist of the action doctrine, which precludes Simpay from recasting ordinary breach of contract claims into breach of fiduciary duty and trade secret misappropriation claims where any potential liability, by Simpay's own allegations, originate solely from the employment agreement. Even if the claims were not barred, Simpay has not sufficiently identified the purported trade secrets at issue or alleged facts showing use or disclosure of these trade secrets. The Third Circuit was clear in *Oakwood Laboratories LLC v. Thanoo* and *Mallet & Co. v. Lacayo*—a plaintiff alleging a trade secret claim must identify the alleged trade secrets with enough specificity to separate it from matters of general knowledge in the trade and permit a defendant to ascertain the boundaries within which the secret lies. Simpay's allegations, which set forth only a generic list of universal business categories, falter against this requirement. Without a trade a secret, Simpay's federal and state trade secret misappropriation claims necessarily fail.

For these reasons, and the reasons discussed in more detail herein, Simpay's claims against Toombs should be dismissed in their entirety and with prejudice.

## II. FACTUAL BACKGROUND

Simpay filed its Complaint on August 27, 2025, alleging four causes of action against Toombs—breach of contract (Count One), breach of fiduciary duty (Count Two), misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") (Count Three), and misappropriation of trade secrets under the Defendant Trade Secrets Act (Count Four). *See* Compl., ¶¶ 63-124. Simpay alleges that it operates in the payment processing industry as a Full Service Provider ("FSP") or Independent Sales Organization ("ISO"), which offers a "comprehensive suite of payment-related services to businesses" and "acts as a one-stop shop for all things related to accepting and processing payments." Compl., ¶¶ 12-13. Simpay alleges that Defendant PayCompass is another ISO. Compl., ¶ 28. Simpay does not allege that PayCompass is a competitor of Simpay or set forth any facts about PayCompass' business.

### A. Toombs' Employment at Simpay

According to the Complaint, Simpay hired Toombs on or around March 6, 2024, as its Executive Vice President of Sales. *See* Compl., ¶ 17. Toombs' employment at Simpay was governed by an employment agreement (the "Employment Agreement"). *See* Compl., ¶ 17, Exhibit A. Simpay alleges that Toombs agreed to abide by certain conditions and terms as set forth in the Employment Agreement, including to (1) faithfully serve and further the interests of Simpay in every lawful way, giving honest, diligent, loyal, and cooperative service to Simpay, (2) conduct business in a manner that reflects favorably at all times on Simpay's goods and services, (3) avoid deceptive, misleading, or unethical practices that are or might be detrimental to Simpay, and (4) make no false or misleading representations with regard to Simpay's goods and services. *See* Compl., ¶¶ 18-19. According to Simpay's own allegations, any fiduciary duty Toombs allegedly owed to Simpay originated from the Employment Agreement itself. *See* Compl., ¶ 84. In addition to the above, Simpay alleges that Toombs acknowledged and agreed

that he would not disclose any of Simpay's "confidential information," as defined in Section 2.04 of the Employment Agreement, to any third party without prior written consent of Simpay or solicit any of Simpay's merchant clients, employees, or agents. *See* Compl., ¶¶ 20-25.

Simpay alleges that Toombs resigned on January 17, 2025, and Simpay thereafter terminated Toombs' employment on January 31, 2025. *See* Compl., ¶¶ 26-27. According to Simpay, before Toombs resigned, and while still employed by Simpay, Toombs allegedly "began recruiting other Simpay employees" to join another ISO.[1] *See* Compl., ¶¶ 28-43. Simpay is "informed and believes" that ISO was PayCompass. *See* Compl., ¶ 28. Simpay does not allege anywhere in the 124-paragraph Complaint that any of the Simpay employees allegedly solicited by Toombs ever left Simpay, let alone to join PayCompass or "Toombs' ISO."[2]

**B. <u>PayCompass Hires Toombs</u>**

Simpay alleges that PayCompass hired Toombs in or around January 2025 as a Sales Director. *See* Compl., ¶ 44. Simpay then claims that Toombs and PayCompass attempted to induce employees to resign and join PayCompass. *See* Compl., ¶¶ 28-29, 43, 51, 58. Again, Simpay does not identify any employee who left Simpay to join PayCompass. Similarly, although Simpay alleges, upon information and belief, that Toombs and PayCompass "successfully diverted" prospective Simpay clients from Simpay to PayCompass, Simpay does not identify who those prospective clients are or state any factual basis that supports Simpay's allegation based on information and belief. *See* Compl., ¶ 60. In addition, Simpay alleges, again upon information and belief and again without any factual predicate, that Toombs and

---

[1] Of note, the employees allegedly solicited by Toombs still work at Simpay. *See* LinkedIn of Wintosky (https://www.linkedin.com/in/michael-witonsky-86379b4b/; LinkedIn of Richey (https://www.linkedin.com/in/dominique-richey-89548a125/); LinkedIn of Berrettini (https://www.linkedin.com/in/amyberrettini/).

[2] Simpay makes reference to "Toombs' ISO" in the Complaint but fails to provide any other allegations regarding that ISO. *See* Compl., ¶¶ 70-71.

PayCompass orchestrated a "scheme" whereby Toombs would work at Simpay for a limited period—approximately eleven months—so that Toombs could gain access to Simpay's trade secrets and then leave and use those trade secrets for his benefit and for the benefit of PayCompass. *See* Compl, ¶ 45. Simpay does not include any facts supporting this pleading upon information and belief.

### C. **<u>Simpay's Claims Against Toombs</u>**

Based on the above allegations, Simpay purports to assert claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets (under both the federal DTSA and the Pennsylvania equivalent PUTSA) against Toombs. *See* Compl., ¶¶ 63-124. All four of Simpay's counts are premised on the employment agreement and the obligations set forth therein. *See* Compl., ¶¶ 17-27 (alleging Toombs' obligations under the Employment Agreement): ¶ 84 (alleging Toombs' owed fiduciary duties to Simpay originating from the Employment Agreement); ¶ 94 (alleging in trade secret claim that Toombs was subject to contractual obligations to protect Simpay's alleged trade secrets and preserve their confidentiality); ¶ 107 (incorporating allegations in Paragraphs 1-62 into federal trade secret claim and using term "Confidential Information," which is defined term in Employment Agreement). Simpay claims it has been damaged in connection with Toombs' alleged conduct, but Simpay does not identify any facts supporting its claim for damages. *See* Compl., ¶¶ 73, 87.

## III. **<u>ARGUMENT</u>**

### A. **<u>Standard for a Motion to Dismiss</u>**

The standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well-established. "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Estate of Rudi v. City of Phila.*, No. 24-cv-5904, 2025 WL 2784227, at *1 (citing *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recital of the elements of a cause of action, supported by ere conclusory statements, do not suffice." ***See Iqbal***, 556 U.S. at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." ***Id.*** at 679. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" or a "formulaic recitation of the elements" does not suffice. *Id.*

**B. <u>Simpay has Failed to State a Breach of Contract Claim Against Toombs.</u>**

To state a claim for breach of contract under Pennsylvania law, Simpay must allege (1) the existence of a contract, (2) breach of that contract, and (3) resultant damages. *See Brightview Landscapes, LLC v. Iatzko*, No. 25-2013-KSM, 2025 WL 1710054, at *4 (E.D. Pa. June 18, 2025). In the Complaint, Simpay alleges that Toombs breached the Employment Agreement in two regards—first, by disclosing Simpay's confidential information to PayCompass without Simpay's written consent, in violation of Section 2.04 of the Employment Agreement, and next, by soliciting Simpay employees and merchant clients and prospective clients away from Simpay in violation of Sections 2.03 and 4.01 of the Employment Agreement. *See* Compl., ¶¶ 66-68, 71, 74. Both claims for breach of contract against Toombs fail.

First, with respect to Simpay's allegations regarding the disclosure of confidential information, Simpay does not set forth any facts to support this claim. There are no allegations that, for example, "[Toombs] left the company with a thumb drive containing confidential information, has confidential documents that he is refusing to return, [or] has spoken with [Simpay's] clients about [Simpay's] confidential information." *See Brightview Landscapes*, 2025 WL 1710054, at *5 (dismissing complaint). Nor are there allegations that, since hiring Toombs, PayCompass has retained customers or expanded in such a way that it would not have been able to absent access to and use of Simpay's alleged trade secrets and confidential information. Rather, the allegations Simpay includes to support its "use" and "disclosure" of

confidential information breach of contract claim are legal conclusions. *See* Compl., ¶¶ 66-68. These cannot suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)( "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Indeed, the only *factual* allegation that Simpay identifies in support of its breach of contract claim, at least with respect to the Confidential Information provision, is that Toombs left Simpay to join PayCompass. *See* Compl., ¶¶ 13, 45. But simply moving to a different company does not automatically establish that a former employee has or will disclose confidential information. *See Brightview Landscapes*, 2025 WL 1710054, at *4 (rejecting assumption that because defendant employee had access to confidential information while working at plaintiff employer and later resigned to go work for a competitor in a similar capacity, he has likely disclosed that information). "If that were true, a plaintiff would almost always be able to state a claim for breach of restrictive covenants based on little more than access and speculation." *Id.* Simpay must instead include some factual allegation that Toombs used or disclosed its confidential information. It has not. Without a factual basis to support these allegations, Simpay's claim for breach of the confidentiality provision against Toombs fails.

Second, with respect to the Non-Solicitation provision of the Employment Agreement, Simpay has failed to allege any damage. Simpay has not identified a single employee that it has lost to PayCompass—or at all—as a result of Toombs' alleged conduct. A breach of contract claim requires resultant damage. Simpay's boilerplate allegations that it has been damaged is inadequate to meet even the most liberal pleading standards. *See Brader v. Allegheny General Hosp.*, 64 F.3d 869, 878 (3d Cir. 1995) ("In order to state a claim for damages arising from a breach of contract, a plaintiff must also plead damages resulting from the alleged breach. This is a natural extension of the general rule that damages for breach of contract are not recoverable

unless there is a 'causal relationship between the breach and the loss.'") (internal citation omitted). Without any allegation establishing Simpay's entitlement to damage, the breach of contract claim again Toombs based on the non-solicitation provision must be dismissed.

### C. **<u>The Gist of the Action Doctrine Bars Plaintiff's Breach of Fiduciary Duty Claim.</u>**

Paragraph 84 of the Complaint makes clear that the fiduciary duties allegedly owed by Toombs to Simpay "originat[e] *from the Employment Agreement*." *See* Compl., ¶ 84 (emphasis added); *see also Batoff v. Charbonneau*, No. 12-cv-05397, 2013 WL 1124497, at *7 (E.D. Pa. March 19, 2013) (finding breach of fiduciary duty claim barred by the gist of the action doctrine where counterclaim-defendants alleged that the plaintiff owed them duties "created by the express provisions" of the contract"). This allegation alone warrants dismissal of Simpay's fiduciary duty claim under Pennsylvania's gist of the action doctrine, which bars tort claims "(1) arising solely from a contract between the parties, (2) where the duties allegedly breached were created and grounded in the contract itself, (3) where the liability stems from a contract, or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *7 (E.D. Pa. Jan. 29, 2015) (quoting *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619-620 (E.D. Pa. 2010)). This Court need look no further than Paragraph 84 because "[t]o determine the nature of the duty alleged to have been breached, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance." *See Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *7 (E.D. Pa. Jan. 29, 2015) (internal quotations omitted). By Simpay's own allegations, Toombs' fiduciary duties were created by the Employment Agreement, and there are no duties that transcend or exist beyond the contract. *See Hirtle Callaghan Holdings, Inc. v. Thompson*, No. 18-2322, 2022 WL

2048656, at *3 (E.D. Pa. June 7, 2022) ("[B]reach of fiduciary duty claims are barred by the [gist of the action] doctrine if there are 'no allegations of breach of fiduciary duty . . . that transcend or exist outside of the parties' contractual agreements.").

Simpay's other allegations, however, only support the conclusion that Simpay has failed to allege the existence of a duty that transcends or exists outside of the Employment Agreement. Simpay claims that Toombs owed it, *inter alia*, duties of loyalty, care, and good faith, but each of these duties is expressly contemplated by the Employment Agreement. Simpay alleges, for example, that Toombs agreed in Section 2.02 of the Employment Agreement to faithfully serve and further the interests of Simpay and give honest, diligent, loyal, and cooperative service to Simpay. *See* Compl., ¶ 18. Simpay also alleges that Toombs agreed in Section 2.03 of the Employment Agreement to conduct business in a manner that reflects favorably on Simpay, avoid deceptive, misleading, or unethical practices, make no false or misleading representations regarding Simpay. *See* Compl., ¶ 19. In addition, Paragraph 20 and 25 of the Complaint state that Toombs agreed, pursuant to Sections 2.04 and 4.01 of the Employment Agreement, to not disclose Simpay's confidential information or solicit employees or clients of Simpay. *See* Compl., ¶¶ 20, 25. These allegations are consistent with Simpay's averments in Paragraph 84: each fiduciary duty allegedly owed by Toombs to Simpay "originat[es] from the Employment Agreement" itself. *See* Compl., ¶ 84; *see also Hirtle Callaghan Holdings, Inc.*, 2022 WL 2048656, at *3 ("If the duties which form the basis for the tort claim are 'intertwined' with the contractual obligations, then the claim sounds in contract.") (citation omitted).

Further, even if the Complaint did not expressly allege that the fiduciary duties allegedly owed by Toombs to Simpay were created by and defined in the Employment Agreement (which it does), Simpay's fiduciary duty claim still fails because it is entirely duplicative of the breach

of contract claim against Toombs. Simpay claims that Toombs breached his fiduciary duties to Simpay by "soliciting Simpay's employees, agents, merchant clients, and prospective clients" and "misappropriating Simpay's confidential information." Compl., ¶ 86. These allegations are identical to the allegations that form the basis of Simpay's breach of contract claim against Toombs. *See* Compl., ¶¶ 70-71 (alleging Toombs breached the employment agreement by soliciting employees, agents, and merchant clients and misappropriating Simpay's trade secrets). Accordingly, the breach of fiduciary duty claim must be dismissed. *See Hirtle Callaghan Holdings, Inc.*, 2022 WL 2048656, at *4 (dismissing breach of fiduciary claim where plaintiff alleged that the defendant breached fiduciary duty by disclosing confidential information but alleged the exact same conduct to support the breach of contract claim); *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 620-21 (E.D. Pa. 2010) (dismissing fiduciary duty claim where it was nothing more than a restatement of the breach of contract claim).

**D. Simpay has Failed to State a Claim for Misappropriation of Trade Secrets.**

To state a claim under the DTSA, a plaintiff must plead (1) the existence of a trade secret, (2) that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret, defined as the knowing improper acquisition or use or disclosure of the trade secret. *See Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citing 18 U.S.C. § 1836-39). "[E]ach of those elements is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *See Mallett & Co. v. Lacayo*, 16 F. 4th 364, 381 (3d Cir. 2021) (citing *Oakwood Labs. LLC*, 999 F.3d at 905). Because the DTSA and the PUTSA are "substantially similar," the same analysis applies to claims brought under the state-equivalent PUTSA. *Id.* at 381 n. 19.

#### i. **<u>The gist of the action doctrine bars the misappropriation claims.</u>**

For the same reasons discussed above, *see* Section III(c) *supra*, Simpay's trade secret misappropriation claims against Toombs must be dismissed under the gist of the action doctrine. This is because the allegations supporting Simpay's trade secret misappropriation claims mirror the breach of contract claim brought against Toombs. Simpay claims that, under the Employment Agreement, Toombs agreed to not to disclose Simpay's Confidential Information to any third party without Simpay's consent and breached this agreement by allegedly disclosing this information outside of Simpay. *See* Compl., ¶ 20. That Confidential Information, as defined in the Employment Agreement, includes merchant lists (Section 2.04(g)), Simpay's sales information (Section 2.04(a)), pricing information (Section 2.04(d)), Simpay's operations, business methods, and business and marketing plans (Section 2.04(a), and any other information Simpay does not publicly disclosed (Section 2.04(k). *See* Compl., ¶ 21. This is the exact information that Simpay claims (1) constitutes Simpay's trade secrets under the DSTA and PUTSA, and (2) was disclosed by Toombs in violation of his Employment Agreement. *See* Compl., ¶ 91 (alleging trade secrets include client lists, pricing strategies, sales processes, referral partner information, information about employees, and internal business strategies); *see also* Compl., ¶ 69 (alleging that the Confidential Information—a defined term in the Employment Agreement—constitutes Simpay's proprietary trade secrets"). Simpay alleges no misappropriation that transcends the obligations outlined in the Employment Agreement. *See* Compl., ¶ 94 (alleging in support of trade secret misappropriation claim that Toombs was under a contractual obligation to protect Simpay's trade secrets and maintain their confidentiality)

The only reasonable interpretation of Simpay's allegations is that Simpay premises its trade secret misappropriation claims on the exact content covered and conduct prohibited by the Employment Agreement. *See Certainteed Ceilings Corp. v. Aiken*, 2015 WL 410029, at *8

(discussing Third Circuit's decision in *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, where Third Circuit held that a misappropriation claim was barred by the gist of the action doctrine to the extent it relied on misappropriation of information covered by a contract) (citing *Bohler*, 247 F.3d 79, 106-07 (3d Cir. 2001)). This renders the misappropriation claim duplicative of the breach of contract claim and barred by the gist of the action doctrine. *See Preston Group, LLC v. Customers Bank*, No. 5:20-cv-06516, 2021 WL 3562893, at *6 (E.D. Pa. Aug. 12, 2021) (dismissing trade secret claims under the gist of the action doctrine where misappropriation claim was "duplicative of" breach of contract claim). The misappropriation claims against Toombs under both the DTSA and PUTSA should therefore be dismissed with prejudice. *See Herley Industries, Inc. v. R Cubed Engineering, LLC*, No. 5:20-cv-02888, 2021 WL 229322, at *5 (E.D. Pa. Jan. 22, 2021) ("Courts are permitted to apply [the gist of the action doctrine] at the pleading stage 'to dismiss what are in reality contract claims, with prejudice.") (citation omitted).

**ii. Simpay has failed to sufficiently identify its alleged trade secrets.**

Even if Simpay's claims were not barred by the gist of the action, Simpay's DTSA and PUTSA claims should still be dismissed because Simpay has failed to identify the trade secrets at issue in this case with sufficient particularity. In the Third Circuit, "information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *See Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021). Although a plaintiff "need not 'spell out the details of the trade secret to avoid' dismissal, . . . the subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* Applying this standard, a plaintiff who describes its trade secrets with a list of "general business terms" does "nothing to put [a defendant] on notice" of a trade secret misappropriation claim.

*See Heritage Fence Co. v. Malin*, No. 24-2650, 2024 WL 5047468, at *4 (E.D. Pa. Dec. 9, 2024) (dismissing trade secret complaint where plaintiff alleged its trade secrets with a list of general business terms such as customer agreements, internal personnel and financial information, names of vendor contacts, development plans, and marketing techniques). Moreover, "[w]hen the breadth of a trade secret description is so far-reaching that it includes publicly available information . . . , that information is not specific enough to be accorded trade secret status." *Mallet & Co. v. Lacayo*, 16 F. 4th 364, 384-8 (3d Cir. 2021) (holding that the plaintiff had not identified its alleged trade secrets with sufficient specificity where plaintiff alleged thirteen broad categories of information). Instead, "[s]pecific examples are needed" to plead the existence of a trade secret. *Id.* at 382 (vacating district court's preliminary injunction and holding the district court's statement of thirteen broad categories of protected material "is better characterized as a list of general categories of business and technical information, a list that could be used to describe documents found in any number of corporations"); *see also Lithero, LLC v. AstraZenca Pharmaceuticals LP*, No. 19-2320-RGA, 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) ("Plaintiff's complaint points to large, general areas of information that Plaintiff alleges to have shared with Defendant, but does not identify what trade secrets are within those general areas.").

Simpay alleges the trade secrets at issue include "merchant client lists, prospective merchant client lists, pricing strategies, sales processes, referral partner information, information about Simpay's top-performing employees, and internal business strategies." *See* Compl., ¶ 91. These allegations are nothing more than general business terms and "vague references" to information that could be found in any number of organizations. *See Mallet & Co.*, 16 F. 4th at 382 (stating that a "generic list" of trade secrets "falters against the standard for specifying a trade secret"); *see also Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 907 (holding

plaintiff adequately alleged trade secrets where plaintiff "gave a very precise example by pointing to a particular document" and "specified the contents of that document as containing trade secrets"). Simpay has not alleged any facts that show how its purported trade secrets extend beyond general knowledge and differ from common business information found in any other industry. *See Mallett*, 16 .4th at 382 (stating that a trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade). "When the breadth of a trade secret description is so far-reaching that it includes publicly available information . . . and admitted industry knowledge, that information is not specific enough to be accorded trade secret status." *Id.* at 384. Simpay must instead plead "enough factual detail to permit [Toombs and this Court] to draw a connection between the alleged trade secret and its value as a '*particular* secret' of the complaining employer' and not general know-how of the trade." *Id.* at 385 (citation omitted). The Complaint fails to do that here.

Moreover, other than a conclusory allegation, Simpay alleges no facts that the information identified in Paragraph 91 is entirely unknown outside of Simpay. *See* Compl., ¶ 93. At this stage, Simpay is required to do more than allege a generic list of general business terms and claim confidentiality with a mere recitation of the elements for a trade secret claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] formulaic recitation of the elements of a cause of action will not do."). Simpay must instead identify its alleged trade secrets with enough specificity to put Toombs on notice of the claims being made against him and set forth facts showing why those trade secrets are confidential to Simpay and not readily ascertainable outside of Simpay. *Mallet*, 16 F.4th at 383 ("Problematically, though, [the plaintiff] fails to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets. With a wave of the hand, it declares

everything to be secret.”). The Complaint fails to do that. Accordingly, having not alleged a requisite trade secret, Simpay’s trade secret claims under both the DTSA and PUTSA should be dismissed with prejudice. *Id.* (stating that a trade secret must be “adequately identified” and that there must be “some evidence tying” a defendant’s conduct “to the taking of those trade secrets” and, without knowing what information allegedly constitutes a trade secret, a court cannot assess whether a defendant acquired, disclosed, or used the trade secret or misappropriated the trade secret).

**iii. <u>Simpay has not alleged misappropriation.</u>**

The DTSA and PUTSA claims should be dismissed because the Complaint contains no factual allegations that establish that Toombs misappropriated Simpay’s alleged trade secrets. The Complaint alleges only, in a conclusory fashion, that Toombs used and disclosed Simpay’s alleged trade secrets. *See* Compl., ¶ 68 (alleging generally, and without factual support, that Toombs breached the Employment Agreement by allegedly disclosing Simpay’s confidential information); ¶ 86 (alleging generally, and without factual support, that Toombs misappropriated confidential information and trade secrets); ¶ 95 (alleging that Toombs disclosed and used Simpay’s trade secrets but including no facts to support this allegation). *Cf. PDC Machines Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 WL 3008531, at *3 (E.D. Pa. June 15, 2018) (permitting trade secret misappropriation claim where the plaintiff alleged facts to support belief that defendant used plaintiff’s trade secret, including allegation that it was “implausible” for defendant to develop certain technology without use of trade secrets). The only non-conclusory factual allegations Simpay includes in the Complaint in support of its trade secret misappropriation claim is that Toombs left Simpay to work at PayCompass. *See* Compl., ¶ 44. “But the leap from there to trade-secret misappropriation goes well beyond inference and into speculation.” *Heritage Fence Co. v. Malin*, No. 24-2650, 2024 WL 5047468, at * 5 (E.D. Pa.

Dec. 9, 2024) (dismissing misappropriation claim where general claims of misappropriation lacked factual context and failed to show how trade secret was misappropriated). Simpay must include more facts to raise a reasonable inference of plausible liability. It has not.

Indeed, the only other allegation Simpay includes in support of its misappropriation claim—that, upon information and belief, Toombs and PayCompass diverted prospective Simpay customers to PayCompass (Compl., ¶ 60)—fares no better. *See Heritage Fence Co.*, 2024 WL 5047468, at *5 (finding only non-conclusory factual allegation supporting misappropriation claim was allegation that defendants contacted plaintiff's vendors and solicited their business and that such allegation was insufficient to state a claim for misappropriation). Simpay has not identified what conduct Toombs allegedly engaged in, other than getting a new job at PayCompass, which he is permitted to do, that supports Simpay's pleading purportedly upon information and belief or raises a plausible inference that the prospective customers allegedly diverted from Simpay could not have been known or obtained without access to Simpay's alleged trade secrets. *See Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 575 n.5 (E.D. Pa. 2022) ("The Third Circuit has explained that pleading upon information and belief is permissible where the factual information is 'peculiarly within the defendant's knowledge or control' *and* the plaintiff accompanies their legal theory [with] sufficient factual allegations that make their theoretically viable claim plausible."). Nor does Simpay ***ever*** identify even a single prospective customer of Simpay allegedly solicited by Toombs or diverted by Toombs to PayCompass. Although Simpay need not include all evidence of misappropriation at the pleading stage, it must still include some circumstantial factual support. *See Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 912 (3d Cir. 2021) (holding that plaintiff adequately alleged misappropriation of trade secrets where plaintiff alleged that (1) the defendant was deceptive about the work he

would engage in at a competitor, (2) the competitor lacked experience in a highly specialized field, and (3) the competitor had rapid success in developing products in that field that took the plaintiff nearly two decades to develop). A review of the Complaint makes clear that Simpay's allegations fall woefully short of this pleading requirement.

Simpay's "claim for relief as it relates to a violation" of the DTSA and PUTSA is thus "merely a string of conclusory statements devoid of any factual basis." *See Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010). Without more, Simpay's conclusory allegations of use, disclosure, and misappropriation cannot survive a motion to dismiss. *See Herley Industries, Inc. v. R Cubed Engineering, LLC*, No. 5:20-cv-02888, 2021 WL 229322, at *7 (E.D. Pa. Jan. 22, 2021) (finding general allegation that defendant used or disclosed trade secrets insufficient to survive a motion to dismiss). It is Simpay's burden to plead its claims, and this Court should "not assume that [Simpay] has the basis for the assertions that it makes nor [should] it attempt to fill-in where [the Complaint] is lacking." *Bioquell*, 2010 WL 4751709, at *6 (dismissing PUTSA claim). Accordingly, Simpay's DTSA and PUTSA claims against Toombs should be dismissed in their entirety and with prejudice.

## IV. CONCLUSION

The pleading standards in this jurisdiction are well-established, and Simpay should know that legal conclusions and threadbare allegations do not suffice. Instead, facts raising a plausible inference of liability must be alleged in the Complaint. Simpay has failed to do that here. All claims against Toombs in the Complaint should therefore be dismissed.

Respectfully submitted,

Dated: November 10, 2025

s/ *CS D'Angelo*

Christopher Scott D'Angelo (PA ID No. 28463)
Kimberly L. Sachs (PA ID No. 325989)
**MONTGOMERY MCCRACKEN**
**WALKER & RHOADS LLP**
1735 Market Street, 19th Floor
Philadelphia, PA 19109
215.772.1500
*Counsel for Defendant Timothy Toombs*

## CERTIFICATE OF SERVICE

I, Christopher Scott D'Angelo, hereby certify that on the 10th day of November, 2025, a true and correct copy of the foregoing Motion to Dismiss of Defendant Timothy Toombs has been filed electronically and is available for viewing and downloading from the Court's ECF system, which will send notice of such filing to all counsel of record.

Dated: November 10, 2025

s/ *CS D'Angelo*
Christopher Scott D'Angelo