**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**ORDER**

AND NOW, this _____ day of ________, 2025, upon consideration of the Motion of Defendant Timothy Toombs to Dismiss the Amended Complaint, and any opposition thereto, it is hereby ORDERED that Defendant Toombs' Motion to Dismiss is GRANTED and the Amended Complaint as against Toombs is DISMISSED with prejudice.

BY THE COURT:

____________________________________
Honorable Wendy Beetlestone

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**MOTION OF DEFENDANT TIMOTHY TOOMBS TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Timothy Toombs ("Toombs") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Amended Complaint on the grounds that the Amended Complaint fails to state a claim against Toombs. In support of this Motion, Toombs incorporates by reference his supporting Brief, filed contemporaneously herewith.

WHEREFORE, Toombs respectfully requests that this Court enter an order dismissing Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

Dated: December 22, 2025

*s/ CS D'Angelo*

Christopher Scott D'Angelo (PA ID No. 28463)
Kimberly L. Sachs (PA ID No. 325989)
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
1735 Market Street, 19th Floor
Philadelphia, PA 19109
215.772.1500
*Counsel for Defendant Timothy Toombs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALPHA CARD SERVICES LLC<br>d/b/a SIMPAY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY TOOMBS and<br>PAYCOMPASS LLC,<br><br>Defendants. | Civil Action<br><br>No.: 2:25-cv-04907-WB |

**BRIEF IN SUPPORT OF MOTION OF**
**DEFENDANT TIMOTHY TOOMBS TO DISMISS THE**
**AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Toombs' Employment at Simpay ..... 3

B. PayCompass Hires Toombs ..... 5

C. Simpay's Claims Against Toombs ..... 6

III. ARGUMENT ..... 6

A. Standard for a Motion to Dismiss ..... 6

B. Simpay has Failed to State a Breach of Contract Claim Against Toombs ..... 7

C. The Gist of the Action Doctrine Bars Plaintiff's Breach of Fiduciary Duties and Breach of Duty of Loyalty Claims ..... 10

D. Simpay's Reliance on Toombs' Alleged Discussion with Sushil Sharma is Insufficient to Support a Breach of Duty of Loyalty Claim ..... 13

E. Simpay has Failed to State a Claim for Misappropriation of Trade Secrets ..... 15

i. The gist of the action doctrine bars Simpay's misappropriation claims ..... 15

ii. Simpay has failed to sufficiently identify its alleged trade secrets ..... 17

iii. Simpay has not alleged misappropriation ..... 20

IV. CONCLUSION ..... 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alston v. Wenerowicz*,
No. 14-2691, 2016 WL 878305 (E.D. Pa. Mar. 7, 2016) ........................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 10

*Bioquell, Inc. v. Feinstein*,
No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ..................................... 24

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*,
247 F.3d 79 (3d Cir. 2001)................................................................................ 16

*Brader v. Allegheny General Hosp.*,
64 F.3d 869 (3d Cir. 1995)................................................................................ 9

*Bret Binder v. Weststar Mortg., Inc.*,
No. CV 14-7073, 2016 WL 3762710 (E.D. Pa. July 13, 2016)................................ 10

*Brightview Landscapes, LLC v. Iatzko*,
No. 25-2013-KSM, 2025 WL 1710054 (E.D. Pa. June 18, 2025)........................ 7, 8, 9

*Brown & Brown, Inc. v. Cola*,
745 F. Supp. 2d 588 (E.D. Pa. 2010) .......................................................... 11, 13

*Certainteed Ceilings Corp. v. Aiken*,
No. 14- 3925, 2015 WL 410029 (E.D. Pa. Jan. 29, 2015)................................ 11, 16

*Chandler v. La-Z-Boy, Inc.*,
621 F. Supp. 3d 568 (E.D. Pa. 2022) .................................................................. 20

*Clemens v. ExecuPharm, Inc.*,
678 F. Supp. 3d 629 (E.D. Pa. 2023) .................................................................. 11

*CoreStates Bank, N.A. v. Cutillo*,
723 A.2d 1053 (Pa. Super. 1999)........................................................................ 9

*DePuy Synthes Sales, Inc. v. Globus Med., Inc.*,
259 F. Supp. 3d 225 (E.D. Pa. 2017) .................................................................. 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Estate of Rudi v. City of Phila.*,
No. 24-cv-5904, 2025 WL 2784227 .......... 6

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).......... 19

*Heritage Fence Co. v. Malin*,
No. 24-2650, 2024 WL 5047468 (E.D. Pa. Dec. 9, 2024).......... 17, 23

*Herley Industries, Inc. v. R Cubed Engineering, LLC*,
No. 5:20-cv-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021).......... 17, 24

*Hirtle Callaghan Holdings, Inc. v. Thompson*,
No. 18-2322, 2022 WL 2048656 (E.D. Pa. June 7, 2022).......... 11, 12, 13

*Lithero, LLC v. AstraZenca Pharmaceuticals LP*,
No. 19-2320-RGA, 2020 WL 4699041 (D. Del. Aug. 13, 2020) .......... 18

*Mallett & Co. v. Lacayo*,
16 F. 4th 364 (3d Cir. 2021) .......... passim

*Marcinak v. Se. Greene Sch. Dist.*,
544 A.2d 1025 (Pa. Super. 1988).......... 9

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010).......... 10

*Midland-Ross Corp. v. Yokana*,
293 F.2d 411 (3d Cir. 1961).......... 14

*Oakwood Laboratories LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021).......... passim

*O'Neill v. Trs. of Univ. of Pennsylvania*,
No. CV 25-1129, 2025 WL 3047884 (E.D. Pa. Oct. 31, 2025).......... 14

*PDC Machines Inc. v. Nel Hydrogen A/S*,
No. 17-5399, 2018 WL 3008531 (E.D. Pa. June 15, 2018).......... 21

*Preston Group, LLC v. Customers Bank*,
No. 5:20-cv-06516, 2021 WL 3562893 (E.D. Pa. Aug. 12, 2021) .......... 16

*Reading Radio, Inc. v. Fink*,
833 A.2d 199 (Pa. Super. 2003).......... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Udodi v. Stern*,
438 F. Supp. 3d 293 (E.D. Pa. 2020) ........ 9

*VanLoan v. Nation of Islam*, No. CV,
20-6112, 2021 WL 3630481 (E.D. Pa. Aug. 16, 2021) ........ 14

**Statutes**

12 Pa. Cons. Stat. § 5302 ........ 18

18 U.S.C. § 1836-39 ........ 15

18 U.S.C. § 1839(3) ........ 18

29 U.S.C. § 157 ........ 18

**Rules**

Fed. R. Civ. P. 10(c) ........ 10

Federal Rule of Civil Procedure 12(b)(6) ........ 6, 10

**Other Authorities**

Restatement (Second) of Agency § 394 (1958) ........ 14

## I. INTRODUCTION

Plaintiff Alpha Card Services LLC d/b/a Simpay's ("Simpay") Amended Complaint brings the instant action against its former employee, Timothy Toombs ("Toombs"), claiming that Toombs breached his Simpay Employment Agreement ("Employment Agreement") and fiduciary duties and violated both federal and Pennsylvania trade secret laws by disclosing Simpay's alleged trade secrets to his new employer, PayCompass LLC ("PayCompass"). Simpay's Amended Complaint fails for the same reasons as its initial Complaint did. Instead of amending the Complaint to address the deficiencies identified by Toombs in his November 10, 2025, Motion to Dismiss, Simpay offers this Court the same conclusory allegations filed four months ago. Like its initial Complaint, Simpay's Amended Complaint lacks any factual averments that move Simpay's claims against Toombs from the realm of speculation into the realm of plausibility. Under even the most liberal pleading standards, Simpay is required to allege facts that raise a plausible inference of liability. Simpay has failed to meet even this liberal standard here, despite having been given yet another opportunity to do so. Instead, Simpay's Amended Complaint, like its original Complaint, asserts only legal conclusions, threadbare allegations, and mere recitations of the elements, again falling woefully short of well-established pleading standards.

More important, Simpay's tort claims against Toombs remain barred by Pennsylvania's gist of the action doctrine, which precludes Simpay from recasting ordinary breach of contract claims into breach of fiduciary duties and trade secret misappropriation claims where any potential liability, by Simpay's own allegations, are grounded in the Employment Agreement and are duplicative of Simpay's breach of contract claim. Even if Simpay's breach of fiduciary duty and trade secret misappropriation claims were not barred, Simpay's Amended Complaint fails to meet the pleading standard required to overcome Toombs' instant Motion to Dismiss. The

factual basis for Simpay's breach of the duty of loyalty claim relies on alleged conduct occurring after the termination of Toombs' employment at Simpay, a time in which Toombs no longer owed a duty of loyalty to Simpay as his employer. More, Simpay failed to sufficiently identify the purported trade secrets at issue or plead facts demonstrating Toombs used or disclosed any of these alleged trade secrets. The Third Circuit was clear in *Oakwood Laboratories LLC v. Thanoo* and *Mallet & Co. v. Lacayo*—a plaintiff alleging a trade secret claim must identify the alleged trade secrets with enough specificity to separate it from matters of general knowledge in the trade and permit a defendant to ascertain the boundaries within which the secret lies. Simpay's allegations, identifying only a generic list of universal business categories, falter against this requirement. Without a trade secret and sufficient pleading of misappropriation, Simpay's federal and state trade secret misappropriation claims necessarily fail.

For these reasons, and the reasons set forth in more detail herein, Simpay's five claims against Tombs should be dismissed in their entirety and with prejudice.

## II. FACTUAL BACKGROUND

Simpay filed its Amended Complaint on December 8, 2025, alleging five causes of action against Toombs—breach of contract (Count One), breach of fiduciary duties (Count Two), breach of duty of loyalty (Count Three), misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") (Count Four), and misappropriation of trade secrets under the Defendant Trade Secrets Act (Count Five). *See* Am. Compl., ¶¶ 80-153. Simpay alleges that it operates in the payment processing industry as a Full Service Provider ("FSP") or Independent Sales Organization ("ISO"), which offers a "comprehensive suite of payment-related services to businesses" and "acts as a one-stop shop for all things related to accepting and processing payments." *See* Am. Compl., ¶¶ 12-13. Simpay alleges that Defendant PayCompass is another ISO. *See* Am. Compl., ¶ 32. Simpay does not allege or set forth any

facts about PayCompass' business, other than alleging that PayCompass is a competitor of Simpay. *See* Am. Compl., ¶ 4.

### A. <u>Toombs' Employment at Simpay</u>

According to the Amended Complaint, Simpay hired Toombs on or around March 6, 2024, as its Executive Vice President of Sales. *See* Am. Compl., ¶ 17. Toombs' employment at Simpay was governed by an employment agreement (the "Employment Agreement"). *See* Am. Compl., ¶ 17, Exhibit A. Pursuant to the Employment Agreement, Toombs was required to "faithfully serve and further the interests of [Simpay] in every lawful way, giving honest, diligent, loyal and cooperative service to" Simpay. *See* Am. Compl., Exhibit A, p. 3. Simpay alleges that Toombs acknowledged and agreed that he would not disclose any of Simpay's "confidential information," as defined in Section 2.04 of the Employment Agreement, to any third party without prior written consent of Simpay or solicit any of Simpay's merchant clients, employees, or agents, as prohibited under Section 4.01 of the Employment Agreement. *See* Am. Compl., ¶¶ 18-23.

Simpay alleges that in the course of his employment as the Executive Vice President of Sales, Simpay entrusted Toombs with access to "nearly all" of Simpay's confidential sales-related information, including the Domo business analytical platform. *See* Am. Compl., ¶¶ 35, 37. Simpay describes Domo as a system that provides users "with access to confidential information regarding Simpay's sales personnel and their performance metrics[.]" *See* Am. Compl., ¶ 37. Simpay then claims that in January 2025, a time in which Toombs was employed by Simpay, he accessed the Domo Sales Leader Dashboard thirty-nine (39) times. *See* Am. Compl., ¶¶ 24-25, 34. Simpay alleges that by virtue of his access to "nearly all" of Simpay's confidential sales-related information, Toombs was able to "view, download, export, photograph, and otherwise retain confidential reports" containing employee metrics and compensation. *See*

Am. Compl., ¶ 36. Although Simpay alleges that Toombs "exported" a confidential report on January 27, 2025 (Am. Compl., ¶ 41), Simpay does not allege that this export was improper or otherwise in violation of Toombs' job duties and responsibilities. Nor does Simpay allege that Toombs ever used or disclosed this report outside of Simpay. Indeed, ***Simpay does not allege that Toombs downloaded, photographed, or otherwise retained Simpay's confidential reports for himself or for use outside of Simpay.***

Simpay alleges that Toombs resigned on January 17, 2025, and Simpay thereafter terminated Toombs' employment on January 31, 2025. *See* Am. Compl., ¶¶ 24-25. What Simpay leaves out of the Amended Complaint is the fact that Simpay knew Toombs was leaving Simpay to pursue different employment and did nothing to restrict Toombs' access to Simpay's systems or alleged trade secrets at any time between January 17, 2025, and January 31, 2025. Exhibit A, January 17, 2025 E-Mail Chain. Indeed, at the time Toombs tendered his resignation, he did so with the offer to remain at Simpay for an additional 30 days to accommodate Simpay's needs, or he would agree to a different schedule that Simpay preferred. *See id.* Simpay had the opportunity to cease Toombs' access to its materials on this day. It did not. Instead, Simpay chose a two-week notice period, continuing Toombs' employment until January 31, 2025. *See id.* Accordingly, Toombs continued doing his job during the designated period. Simpay does not allege any facts that it restricted or otherwise limited Toombs' access to its systems during this period. Nor does Simpay allege that it monitored Toombs' activity during this time or took reasonable measures to restrict a departing employee's access to certain Simpay materials.

According to Simpay, before Toombs resigned, and while still employed by Simpay, Toombs allegedly "began recruiting other Simpay employees" to join another ISO.[1] *See* Am.

[1] Of note, the employees allegedly solicited by Toombs still work at Simpay. *See* LinkedIn of Wintosky (https://www.linkedin.com/in/michael-witonsky-86379b4b/; LinkedIn of Richey

Compl., ¶¶ 32-33, 42-54. Simpay is "informed and believes" that ISO was PayCompass. *See* Am. Compl., ¶ 32. Simpay does not allege anywhere in the 170-paragraph Amended Complaint that any of the Simpay employees allegedly solicited by Toombs ever left Simpay, let alone to join PayCompass or "Toombs' ISO."[2]

**B. <u>PayCompass Hires Toombs</u>**

Simpay alleges that PayCompass hired Toombs in or around January 2025 as a Sales Director. *See* Am. Compl., ¶ 55. Simpay then claims that Toombs and PayCompass attempted to induce employees to resign and join PayCompass. *See* Am. Compl., ¶¶ 54, 67, 86. Again, Simpay does not identify any employee who left Simpay to join PayCompass. Similarly, although Simpay alleges, "upon information and belief," that Toombs and PayCompass "successfully diverted" prospective Simpay clients from Simpay to PayCompass, Simpay does not identify who those prospective clients are or state any factual basis that supports Simpay's allegation. *See* Am. Compl., ¶ 69.

In addition, Simpay alleges, again "upon information and belief" and again without any factual predicate, that Toombs and PayCompass orchestrated a "scheme" whereby Toombs would work at Simpay for a limited period—approximately eleven months—so that Toombs could gain access to Simpay's trade secrets and then leave and use those trade secrets for his benefit and for the benefit of PayCompass. *See* Am. Compl., ¶ 56. Simpay does not include any facts supporting this pleading. Simpay then alleges that in February 2025, and in furtherance of this claimed "scheme," Toombs engaged in a discussion with one of Simpay's referral partners,

(https://www.linkedin.com/in/dominique-richey-89548a125/); LinkedIn of Berrettini (https://www.linkedin.com/in/amyberrettini/).

[2] Simpay makes reference to "Toombs' ISO" in the Amended Complaint but fails to identify or provide any other allegations regarding any such purported ISO. *See* Am. Compl., ¶¶ 85-86.

Sushil Sharma, at an event the two attended in Atlantic City, New Jersey. *See* Am. Compl., ¶ 61. Simpay acknowledged that Toombs knew Sharma prior to the February 2025 encounter. *See* Am. Compl., ¶ 60. Simpay does not allege that it lost Sharma as a referral partner.

### C. Simpay's Claims Against Toombs

Based on the above allegations, Simpay purports to assert claims for breach of contract, breach of fiduciary duties, breach of duty of loyalty, and misappropriation of trade secrets (under both the federal DTSA and the Pennsylvania equivalent PUTSA) against Toombs. *See* Am. Compl., ¶¶ 80-153. All five of Simpay's counts are premised on the Employment Agreement and the obligations set forth therein. *See* Am. Compl., ¶¶ 17-23 (alleging Toombs' obligations under the Employment Agreement); ¶ 104 (relying on the definition of "Confidential Information" set forth in Toombs' Employment Agreement to categorize the information's Toombs purportedly disclosed in violation of his fiduciary duties); ¶ 123 (alleging in trade secret claim that Toombs was obligated to protect Simpay's alleged trade secrets and preserve their confidentiality); ¶ 136 (incorporating allegations in Paragraphs 1-79 into federal trade secret claim). Simpay claims it has been damaged in connection with Toombs' alleged conduct, but Simpay does not identify any facts supporting its claim for damages. *See* Am. Compl., ¶¶ 88, 90, 108, 117.

## III. ARGUMENT

### A. Standard for a Motion to Dismiss

The standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well-established. "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Estate of Rudi v. City of Phila.*, No. 24-cv-5904, 2025 WL 2784227, at *1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recital of the elements of a cause of action,

supported by ere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" or a "formulaic recitation of the elements" does not suffice. *Id.*

### B. Simpay has Failed to State a Breach of Contract Claim Against Toombs.

To state a claim for breach of contract under Pennsylvania law, Simpay must allege (1) the existence of a contract, (2) breach of that contract, and (3) resultant damages. *See Brightview Landscapes, LLC v. Iatzko*, No. 25-2013-KSM, 2025 WL 1710054, at *4 (E.D. Pa. June 18, 2025). In the Amended Complaint, Simpay alleges that Toombs breached the Employment Agreement in two regards—first, by disclosing Simpay's confidential information to PayCompass without Simpay's written consent, in violation of Section 2.04 of the Employment Agreement, and next, by soliciting Simpay employees and merchant clients and prospective clients away from Simpay in violation of Sections 2.03 and 4.01 of the Employment Agreement. *See* Am. Compl., ¶¶ 82-87, 92-93. Both claims for breach of contract against Toombs fail.

First, with respect to Simpay's allegations regarding the disclosure of confidential information, Simpay again sets forth no facts to support this claim. Simpay fails to allege, for example, that "[Toombs] left the company with a thumb drive containing confidential information, has confidential documents that he is refusing to return, [or] has spoken with [Simpay's] clients about [Simpay's] confidential information." *See Brightview Landscapes*, 2025 WL 1710054, at *5 (dismissing complaint). Nor are there allegations that, since hiring Toombs, PayCompass retained customers or expanded in such a way that it would not have been able to do absent access to and use of Simpay's alleged trade secrets and confidential information. Rather, the allegations Simpay includes to support its "use" and "disclosure" of

confidential information breach of contract claim are legal conclusions. *See* Am. Compl., ¶¶ 83, 85-87. These cannot suffice. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Indeed, the only *factual* allegation that Simpay identifies in support of its breach of contract claim, at least with respect to the Confidential Information provision, is that Toombs left Simpay to join PayCompass. *See* Am. Compl., ¶ 56. But simply moving to a different company does not automatically establish that a former employee has or will disclose confidential information. *See Brightview Landscapes*, 2025 WL 1710054, at *4 (rejecting the assumption that because defendant employee had access to confidential information while working at plaintiff employer and later resigned to go work for a competitor in a similar capacity, he has likely disclosed that information). "[I]f that were true, a plaintiff would almost always be able to state a claim for breach of restrictive covenants based on little more than access and speculation." *Id.* Instead, Simpay must include some factual allegation that Toombs used or disclosed its confidential information. Again, it has not.

Simpay asserts only legal conclusions stating Toombs disclosed its purportedly confidential information without any factual assertions in support of the same. *See* Am. Compl., ¶¶ 74, 77. While Simpay alleges "Toombs was able to view, download, export, photograph, and otherwise retain" Simpay's confidential information, Simpay makes no allegation that Toombs actually downloaded, exported, photographed, or otherwise retained this information. *See* Am. Compl., ¶¶ 36, 70. Mere ability does not equal action. Without a factual basis to support these allegations, Simpay's claim for breach of the confidentiality provision against Toombs fails.

Second, with respect to the non-solicitation provision of the Employment Agreement, Simpay has failed to allege any damage. Simpay failed to identify a single employee that it lost

to PayCompass—or at all—as a result of Toombs' alleged conduct. A breach of contract claim requires resultant damage. *See Brightview Landscapes, LLC*, 2025 WL 1710054, at *4. Simpay's boilerplate allegations that it has been damaged are inadequate to meet even the most liberal pleading standards. *See Brader v. Allegheny General Hosp.*, 64 F.3d 869, 878 (3d Cir. 1995) ("In order to state a claim for damages arising from a breach of contract, a plaintiff must also plead damages resulting from the alleged breach. This is a natural extension of the general rule that damages for breach of contract are not recoverable unless there is a 'causal relationship between the breach and the loss.'") (internal citation omitted). Without any allegation establishing Simpay's entitlement to damage, the breach of contract claim against Toombs based on the non-solicitation provision must be dismissed. *See Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) ("While not every term of a contract must be stated in complete detail, every element must be specifically pleaded.") (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

Further, Simpay's reliance on Toombs' alleged solicitation of Simpay's referral partners, including Sushil Sharma, is insufficient to state a breach of contract claim. Toombs' Employment Agreement does not contain a prohibition against talking to Simpay's referral partners, an alleged basis for Simpay's breach of contract claim, particularly after the conclusion of an employer-employee relationship. *See* Am. Compl., ¶ 61, Ex. A. Simpay cannot now attempt to write a restriction into the Employment Agreement that is not exhibited by the clear and unambiguous language contained therein and explicitly agreed to by Toombs. *Marcinak v. Se. Greene Sch. Dist.*, 544 A.2d 1025, 1027 (Pa. Super. 1988) ("The intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express

language of the agreement."). Therefore, because Simpay's allegations in the Amended Complaint are insufficient to show both breach and resultant damages, Simpay's breach of contract claim should be dismissed. *Bret Binder v. Weststar Mortg., Inc.*, No. CV 14-7073, 2016 WL 3762710, at *2 (E.D. Pa. July 13, 2016) ("In evaluating the merits of the defendants' motions to dismiss the Amended Complaint, the Court is looking for 'something more than a mere possibility of the claim as alleged'; the plaintiff must have alleged in his Amended Complaint 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Alston v. Wenerowicz*, No. 14-2691, 2016 WL 878305, at *1 (E.D. Pa. Mar. 7, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

### C. <u>The Gist of the Action Doctrine Bars Plaintiff's Breach of Fiduciary Duties and Breach of Duty of Loyalty Claims.</u>

While Simpay amended its Complaint to now allege Toombs' alleged fiduciary duties, including his duty of loyalty, "exist independently of the Employment Agreement and arise by operation of agency law," (*see* Am. Compl. ¶¶ 102, 112), Simpay cannot plead around the Employment Agreement, which it attached as an exhibit to the Amended Complaint and therefore incorporated by reference. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (citation omitted). The Employment Agreement required Toombs to adhere to certain fiduciary duties, including to "faithfully serve and further the interests of [Simpay] in every lawful way, giving honest, diligent, loyal and cooperative service to" Simpay. *See* Am. Compl., Exhibit A,

p. 3. Simpay's claims for breach of fiduciary duties and the duty of loyalty thus remain barred pursuant to Pennsylvania's gist of the action doctrine.

Pennsylvania's gist of the action doctrine bars tort claims "(1) arising solely from a contract between the parties, (2) where the duties allegedly breached were created and grounded in the contract itself, (3) where the liability stems from a contract, or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Certainteed Ceilings Corp. v. Aiken*, No. 14- 3925, 2015 WL 410029, at *7 (E.D. Pa. Jan. 29, 2015) (quoting *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619-620 (E.D. Pa. 2010)). "To determine the nature of the duty alleged to have been breached, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance." *See Certainteed Ceilings Corp.*, No. 14-3925, 2015 WL 410029, at *7 (internal quotations omitted). Simpay chose to attach the Employment Agreement as documentary evidence for its allegations and thus the provisions of the Employment Agreement govern the instant action. *See Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629 (E.D. Pa. 2023) ("At the motion to dismiss stage, the Court's interpretation of a contract as a matter of law is appropriate only when the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading[.]") (citation and internal quotation omitted); *see also Hirtle Callaghan Holdings, Inc. v. Thompson*, No. 18-2322, 2022 WL 2048656, at *3 (E.D. Pa. June 7, 2022) ("[B]reach of fiduciary duty claims are barred by the [gist of the action] doctrine if there are 'no allegations of breach of fiduciary duty . . . that transcend or exist outside of the parties' contractual agreements.").

Simpay's inclusion of the Employment Agreement as an exhibit to the Amended Complaint supports the conclusion that Simpay failed to allege the existence of a duty that

transcends or exists outside Toombs' Employment Agreement. Simpay claims that Toombs owed it, *inter alia*, duties of loyalty, care, and good faith, but each of these duties is expressly contemplated by the Employment Agreement. *See* Am. Compl., ¶ 101. Simpay alleges, for example, that Toombs, "independent[] of the Employment Agreement," was required to avoid self-dealing; disclose conflicting interests that may have arisen during the course of his employment and any conduct in breach of his Employment Agreement; and refrain from competing with Simpay, soliciting Simpay's employees, agents, or clients for the benefit of himself or any competing enterprise, and using or disclosing Simpay's proprietary information. *See* Am. Compl., ¶ 102. But each of these purported requirements is grounded in Toombs' Employment Agreement. *See* Am. Compl., Ex. A at pp. 3-4, 6; *see also Hirtle Callaghan Holdings, Inc.*, 2022 WL 2048656, at *3 ("If the duties which form the basis for the tort claim are 'intertwined' with the contractual obligations, then the claim sounds in contract.") (citation omitted). Indeed, under the Employment Agreement, Toombs was required to "faithfully serve and further the interests of [Simpay] in every lawful way, giving honest, diligent, loyal and cooperative service to" Simpay. *See* Am. Compl., Exhibit A, p. 3. Simpay has failed to allege how any fiduciary duty Toombs allegedly owed to Simpay exists outside of the Employment Agreement in light of this unambiguous language setting forth Toombs' duties to Simpay. *See DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 235 (E.D. Pa. 2017) ("[B]reach of fiduciary duty claims are barred by the gist of the action doctrine if there are no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of the parties' contractual agreements.") (citations and internal quotations omitted).

Further, Simpay's breach of fiduciary duty claim is entirely duplicative of its breach of contract claim. This Court need do no more than compare Simpay's allegations in support of its

breach of contract claim (*see* Am. Compl., ¶¶ 80-89) to those averred in support of its breach of fiduciary duties and breach of duty of loyalty claims (*see* Am. Compl., ¶¶ 99-107, 113-116) to realize the latter essentially duplicate the former. *See Brown & Brown, Inc.*, 745 F. Supp. 2d at 621 (granting defendants' motion to dismiss in part and barring plaintiffs' claims under the gist of the action doctrine where plaintiff's breach of fiduciary duty and breach of the duty of loyalty claims were "nothing more than a restatement of [p]laintiffs' breach of contract claim"). Simpay claims that Toombs breached his fiduciary duties to Simpay by "recruiting Simpay employees to leave Simpay, soliciting Simpay agents to move their business to PayCompass, … acting for the benefit of PayCompass rather than Simpay[,]" and "accessing proprietary and confidential business information for non-Simpay purposes[.]" *See* Am. Compl., ¶ 103. These allegations are identical to the allegations that form the basis of Simpay's breach of contract claim against Toombs. *Id*. at ¶¶ 83, 85 (alleging Toombs breached the employment agreement by soliciting employees, agents, and merchant clients and misappropriating Simpay's trade secrets). Accordingly, the breach of fiduciary duties and breach of duty of loyalty claims must be dismissed. *See Hirtle Callaghan Holdings, Inc.*, 2022 WL 2048656, at *4 (dismissing breach of fiduciary claim where plaintiff alleged that the defendant breached fiduciary duty by disclosing confidential information but alleged the exact same conduct to support the breach of contract claim); *Brown & Brown, Inc.*, 745 F. Supp. 2d at 620-21 (dismissing fiduciary duty claim where it was nothing more than a restatement of the breach of contract claim).

### D. <u>Simpay's Reliance on Toombs' Alleged Discussion with Sushil Sharma is Insufficient to Support a Breach of Duty of Loyalty Claim.</u>

As demonstrated above, *see* Section III(c) *supra*, Simpay's breach of duty of loyalty claim against Toombs is barred by the gist of the action doctrine. Even if Simpay's breach of duty of loyalty claim were not barred, it still fails for the independent reason that Simpay failed

to plead sufficient factual support for its claim. Simpay's Amended Complaint alleges Toombs breached his fiduciary duty of loyalty by "recruiting Simpay referral agents to join PayCompass[.]" *See* Am. Compl., ¶ 113. The only referral partner identified by Simpay in its Amended Complaint is Sushil Sharma, and Simpay alleged that Toombs spoke to Sharma in February 2025 and "*after* Toombs had left Simpay." *Id*. at ¶ 61 (emphasis added). This admission alone demonstrates the insufficiency of Simpay's breach of the duty of loyalty claim because Toombs' duty of loyalty to Simpay terminated on January 31, 2025, the date on which Simpay formally terminated Toombs' employment. *See Midland-Ross Corp. v. Yokana*, 293 F.2d 411, 413 (3d Cir. 1961) (stating that pursuant to an employee's fiduciary duty of loyalty, "[h]e must not, *while employed*, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the *employer-employee relationship*") (emphasis added); *see also Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. 2003) ("To prevail on a claim of breach of fiduciary duty of loyalty, a plaintiff must demonstrate that his agent acted for a person or entity whose interests conflicted with the plaintiff.") (citing Restatement (Second) of Agency § 394 (1958)); *O'Neill v. Trs. of Univ. of Pennsylvania*, No. CV 25-1129, 2025 WL 3047884, at *10 (E.D. Pa. Oct. 31, 2025) (recognizing the absence of an agency relationship between an employer and non-employee). Therefore, because Simpay's and Toombs' employee-employer relationship ended on January 31, 2025, Toombs' owed no duty of loyalty to Simpay in February 2025 and his conversation with Sushil Sharma cannot serve as the factual basis for Simpay's breach of duty of loyalty claim against Toombs. *See VanLoan v. Nation of Islam*, No. CV 20-6112, 2021 WL 3630481, at *2 (E.D. Pa. Aug. 16, 2021), *aff'd*, No. 21-2699, 2022 WL 3043152 (3d Cir. Aug. 2, 2022) (holding a pleading that offers insufficient factual support for claims therein must be dismissed under Rule 12(b)(6)). The claim must be dismissed.

### E. <u>Simpay has Failed to State a Claim for Misappropriation of Trade Secrets.</u>

To state a claim under the DTSA, a plaintiff must plead (1) the existence of a trade secret, (2) that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret, defined as the knowing improper acquisition or use or disclosure of the trade secret. *See Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citing 18 U.S.C. § 1836-39). "[E]ach of those elements is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *See Mallett & Co. v. Lacayo*, 16 F. 4th 364, 381 (3d Cir. 2021) (citing *Oakwood Labs. LLC*, 999 F.3d at 905). Because the DTSA and the PUTSA are "substantially similar," the same analysis applies to claims brought under the state-equivalent PUTSA. *Id.* at 381 n. 19.

#### i. <u>The gist of the action doctrine bars Simpay's misappropriation claims.</u>

For the same reasons discussed above, *see* Section III(c) *supra*, Simpay's trade secret misappropriation claims against Toombs must be dismissed under the gist of the action doctrine. This is because the allegations supporting Simpay's trade secret misappropriation claims mirror the breach of contract claim brought against Toombs. Simpay claims that, under the Employment Agreement, Toombs agreed to not disclose Simpay's Confidential Information to any third party without Simpay's consent and breached this agreement by allegedly disclosing this information outside of Simpay. *See* Am. Compl., ¶¶ 18, 124, 143. That Confidential Information, as defined in the Employment Agreement, includes merchant lists (Section 2.04(g)), Simpay's sales information (Section 2.04(a)), pricing information (Section 2.04(d)), Simpay's operations, business methods, and business and marketing plans (Section 2.04(a)), and any other information Simpay does not publicly disclose (Section 2.04(k)). *See* Am. Compl., ¶ 19. This is the exact information that Simpay claims (1) constitutes Simpay's trade secrets under the DTSA

and PUTSA, and (2) was disclosed by Toombs in violation of his Employment Agreement. *See* Am. Compl., ¶ 84 (alleging Toombs breached his Employment Agreement by disclosing Simpay's lists of current and prospective merchant clients), ¶ 120 (alleging Simpay's trade secrets include client lists, pricing strategies, sales processes, referral partner information, merchant-specific transaction metrics, information about employees, and internal business strategies), ¶ 137 (same). Simpay alleges no misappropriation that transcends the obligations outlined in the Employment Agreement. *See* Am. Compl., ¶ 120 (alleging in support of trade secret misappropriation claim that Toombs was under an obligation to protect Simpay's trade secrets and maintain their confidentiality).

The only reasonable interpretation of Simpay's allegations in the Amended Complaint is that Simpay premises its trade secret misappropriation claims on the exact content covered and conduct prohibited by the Employment Agreement. *See Certainteed Ceilings Corp.*, 2015 WL 410029, at *8 (discussing Third Circuit's decision in *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, where Third Circuit held that a misappropriation claim was barred by the gist of the action doctrine to the extent it relied on misappropriation of information covered by a contract) (citing *Bohler*, 247 F.3d at 106-07). Simpay's categorization of its alleged trade secrets is grounded in the Employment Agreement's definition of "Confidential Information," a context expressly barred by the gist of the action doctrine. *See Certainteed Ceilings Corp.*, 2015 WL 410029, at *7. This renders the misappropriation claim duplicative of the breach of contract claim and barred by the gist of the action doctrine. *See Preston Group, LLC v. Customers Bank*, No. 5:20-cv-06516, 2021 WL 3562893, at *6 (E.D. Pa. Aug. 12, 2021) (dismissing trade secret claims under the gist of the action doctrine where misappropriation claim was "duplicative of" breach of contract claim). The misappropriation claims against Toombs under both the DTSA

and PUTSA should therefore be dismissed with prejudice. *See Herley Industries, Inc. v. R Cubed Engineering, LLC*, No. 5:20-cv-02888, 2021 WL 229322, at *5 (E.D. Pa. Jan. 22, 2021) ("Courts are permitted to apply [the gist of the action doctrine] at the pleading stage 'to dismiss what are in reality contract claims, with prejudice.") (citation omitted).

**ii. <u>Simpay has failed to sufficiently identify its alleged trade secrets.</u>**

Even if Simpay's amended claims were not barred by the gist of the action, Simpay's DTSA and PUTSA claims should still be dismissed because Simpay has failed to identify the trade secrets at issue in this case with sufficient particularity. In the Third Circuit, "information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *See Oakwood Laboratories LLC*, 999 F.3d at 906. Although Simpay "need not 'spell out the details of the trade secret to avoid' dismissal, . . . the subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* Applying this standard, a plaintiff who describes its trade secrets with a list of "general business terms" does "nothing to put [a defendant] on notice" of a trade secret misappropriation claim. *See Heritage Fence Co. v. Malin*, No. 24-2650, 2024 WL 5047468, at *4 (E.D. Pa. Dec. 9, 2024) (dismissing trade secret complaint where plaintiff alleged its trade secrets with a list of general business terms such as customer agreements, internal personnel and financial information, names of vendor contacts, development plans, and marketing techniques). Moreover, "[w]hen the breadth of a trade secret description is so far-reaching that it includes publicly available information . . ., that information is not specific enough to be accorded trade secret status." *Mallet & Co.*, 16 F. 4th at 384-8 (holding that the plaintiff had not identified its alleged trade secrets with sufficient specificity where plaintiff alleged thirteen broad categories of

information). Instead, "[s]pecific examples are needed" to plead the existence of a trade secret. *Id*. at 382 (vacating district court's preliminary injunction and holding the district court's statement of thirteen broad categories of protected material "is better characterized as a list of general categories of business and technical information, a list that could be used to describe documents found in any number of corporations"); *see also Lithero, LLC v. AstraZenca Pharmaceuticals LP*, No. 19-2320-RGA, 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) ("Plaintiff's complaint points to large, general areas of information that Plaintiff alleges to have shared with Defendant, but does not identify what trade secrets are within those general areas.").

Instead of amending its Complaint to properly identify a trade secret with the requisite specificity, Simpay added three generic categories—merchant-specific transaction metrics, employee and agent metrics, and identities of referral partners—to its already inadequate list of purported trade secrets. Simpay alleges the trade secrets at issue include "merchant client lists, prospective merchant client lists, pricing strategies, sales processes, referral partner information, merchant-specific transaction information, Simpay's top-performing employee and agent metrics,[3] and internal business strategies[.]" *See* Am. Compl., ¶¶ 120, 137. These allegations are nothing more than general business terms and "vague references" to information that could be found in any number of organizations. *See Mallet & Co.*, 16 F. 4th at 382 (stating that a "generic list" of trade secrets "falters against the standard for specifying a trade secret"); *see also Oakwood Laboratories LLC*, 999 F.3d at 907 (holding plaintiff adequately alleged trade secrets where plaintiff "gave a very precise example by pointing to a particular document" and

[3] An aspect of Simpay's "top-performing employee and agent metrics" that it alleges is a trade secret includes employees' compensations. *See* Am. Compl., 35-36, 67-68. The DTSA and PUTSA do not include employee compensation within its definition of trade secrets. *See* 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302. More, the National Labor Relations Act permits employees to engage in collective bargaining, including discussion of wages in the workplace, thus diminishing employee compensations as a classified trade secret providing independent economic value to employers. *See* 29 U.S.C. § 157.

"specified the contents of that document as containing trade secrets"). Unlike in *Oakwood Laboratories*, Simpay failed to provide a precise example of the information it claims constitute trade secrets or specify the contents of the purportedly protected documents. Simpay also failed, again, to allege any facts that show how its purported trade secrets extend beyond general knowledge and differ from common business information found in any other industry. *See Mallett*, 16 F. 4th at 382 (stating that a trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade). "When the breadth of a trade secret description is so far-reaching that it includes publicly available information . . . and admitted industry knowledge, that information is not specific enough to be accorded trade secret status." *Id*. at 384. Simpay was instead required to plead "enough factual detail to permit [Toombs and this Court] to draw a connection between the alleged trade secret and its value as a 'particular secret' of the complaining employer' and not general know-how of the trade." *Id*. at 385 (citation omitted). The Amended Complaint fails to do that here.

Moreover, other than a conclusory allegation, Simpay again alleges no facts that the information identified in Paragraphs 120 and 137 is entirely unknown outside of Simpay. *See* Compl., ¶¶ 122 (alleging "Simpay's trade secrets are not generally known to, and are not readily ascertainable by, competitors or the public through proper means"), 141 (same); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 663). While Simpay alleges it "maintained [its] confidential information within password-protected systems[,]" (*see* Am. Compl., ¶¶ 35, 121) Simpay fails to allege a factual basis supporting its legal conclusion that the purported confidential information

was unknown outside of Simpay, including but not limited to, allegations that referral partners and merchants are required to keep their identities secret. At this stage, Simpay is required to do more than allege a generic list of general business terms and claim confidentiality with a mere recitation of the elements for a trade secret claim. *See Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do."). Simpay must instead identify its alleged trade secrets with enough specificity to put Toombs on notice of the claims being made against him and set forth facts showing why those trade secrets are confidential to Simpay and not readily ascertainable outside of Simpay. *Mallet*, 16 F.4th at 383 ("Problematically, though, [the plaintiff] fails to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets. With a wave of the hand, it declares everything to be secret."). The Amended Complaint, like Simpay's first Complaint, fails to do that. Accordingly, having not alleged a requisite trade secret, Simpay's trade secret claims under both the DTSA and PUTSA should be dismissed with prejudice. *Id.* (stating that a trade secret must be "adequately identified" and that there must be "some evidence tying" a defendant's conduct "to the taking of those trade secrets" and, without knowing what information allegedly constitutes a trade secret, a court cannot assess whether a defendant acquired, disclosed, or used the trade secret or misappropriated the trade secret).

**iii. <u>Simpay has not alleged misappropriation.</u>**

The only potentially meaningful amendments Simpay made in its Amended Complaint, all of which are alleged on "information and belief," seek to bolster Simpay's claim that Toombs misappropriated its trade secrets. Simpay's efforts, however, still fall far short of the mark. *See Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 575 n.5 (E.D. Pa. 2022) ("The Third Circuit has explained that pleading upon information and belief is permissible where the factual information is 'peculiarly within the defendant's knowledge or control' and the plaintiff

accompanies their legal theory [with] sufficient factual allegations that make their theoretically viable claim plausible."). The DTSA and PUTSA claims should still be dismissed because the Amended Complaint contains no factual allegations that establish Toombs misappropriated Simpay's alleged trade secrets. The Amended Complaint alleges only, in conclusory fashion, that Toombs used and disclosed Simpay's alleged trade secrets. *See* Am. Compl., ¶ 83 (alleging generally, and without factual support, that Toombs breached the Employment Agreement by allegedly disclosing Simpay's confidential information); ¶ 124 (alleging that Toombs disclosed and used Simpay's trade secrets but including no facts to support this allegation). *Cf. PDC Machines Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 WL 3008531, at *3 (E.D. Pa. June 15, 2018) (permitting trade secret misappropriation claim where the plaintiff alleged facts to support belief that defendant used plaintiff's trade secret, including allegation that it was "implausible" for defendant to develop certain technology without use of trade secrets). While Simpay alleges Toombs "accessed Simpay's Sales Leader Dashboard" (*see* Am. Compl., ¶ 40) and "was able to view, download, export, photograph, and otherwise retain" Simpay's confidential reports (*see* Am. Compl., ¶¶ 36, 70), Simpay fails to offer factual allegations that Toombs engaged in any misappropriating conduct. Stated differently, mere *ability* to engage in a course of conduct does not equate to a factual allegation that Toombs in fact downloaded, exported, photographed, or retained any of Simpay's confidential information.

More, Simpay's allegations that "[i]n January of 2025 alone, Toombs accessed Simpay's Sales Leader Dashboard 39 times" (*see* Am. Compl., ¶ 40) fares no better. First, per Simpay's own allegations and referenced documents, Toombs was employed by Simpay until January 31, 2025, even after Toombs gave notice. Second, Simpay cannot claim that it had taken "reasonable measures to safeguard the confidentiality and secrecy of its trade secrets" (Am.

Compl., ¶ 140) when it permitted an employee to continue to access those trade secrets after tendering his resignation. Indeed, Simpay was aware as of January 17, 2025 that Toombs was leaving Simpay, and it could have taken steps to protect its alleged trade secrets as of that day by accepting Toombs' resignation, rejecting any proposed notice period, and ending his employment then and there. Or, Simpay could have restricted Toombs' access to its systems for the two-week notice period. It did neither. Instead, Simpay continued to employ Toombs from January 17, 2025, through January 31, 2025, without restriction. *See* Ex. A. Toombs continued to perform his job duties and responsibilities for Simpay during this time. Simpay fails to allege any facts that Toombs' was unauthorized to access the Simpay systems, including the Domo system, Sales Leadership Dashboard, and Feed Navigator, to perform his duties during this notice period or that Simpay took reasonable measures to protect these systems upon learning of Toombs' planned departure. Nor does Simpay allege that this access was somehow unusual or out of the ordinary given Toombs' job responsibilities and duties. If such access were unusual or out of the ordinary, then Simpay, who certainly had the ability to and presumably was monitoring a departing employee's activity, could have terminated Toombs upon learning of any access it believed to be concerning. Again, it did not. Simpay instead continued to employ Toombs and he continued to do his job for the full two-week notice period. An allegation that Toombs accessed a system 39 times in January 2025 while still employed, without any allegation that this access was unauthorized, improper, or inconsistent with Toombs' job duties (let alone without a comparison or allegation regarding Toombs' access in earlier months), cannot serve as the basis for a misappropriation claim.

The only non-conclusory factual allegations Simpay includes in the Amended Complaint in support of its trade secret misappropriation claim is that Toombs left Simpay to work at

PayCompass. *See* Am. Compl., ¶ 55. "But the leap from there to trade-secret misappropriation goes well beyond inference and into speculation." *Heritage Fence Co.*, 2024 WL 5047468, at *5 (dismissing misappropriation claim where general claims of misappropriation lacked factual context and failed to show how trade secret was misappropriated). Simpay must include more facts to raise a reasonable inference of plausible liability. Simpay has not.

Indeed, the only other allegation Simpay includes in support of its misappropriation claim—that, upon information and belief, Toombs and PayCompass diverted prospective Simpay customers to PayCompass (Am. Compl., ¶ 69)—fares no better. Simpay has not identified what conduct Toombs allegedly engaged in, other than getting a new job at PayCompass, which he is permitted to do, that supports Simpay's pleading purportedly upon information and belief or raises a plausible inference that the prospective customers allegedly diverted from Simpay could not have been known or obtained without access to Simpay's alleged trade secrets. *See Heritage Fence Co.*, 2024 WL 5047468, at *5 (finding only non-conclusory factual allegation supporting misappropriation claim was allegation that defendants contacted plaintiff's vendors and solicited their business and that such allegation was insufficient to state a claim for misappropriation). Nor does Simpay ever identify even a single prospective customer of Simpay allegedly solicited by Toombs or diverted by Toombs to PayCompass. Although Simpay need not include all evidence of misappropriation at the pleading stage, it must still include some circumstantial factual support. *See Oakwood Laboratories LLC*, 999 F.3d at 912 (holding that plaintiff adequately alleged misappropriation of trade secrets where plaintiff alleged that (1) the defendant was deceptive about the work he would engage in at a competitor, (2) the competitor lacked experience in a highly specialized field, and (3) the competitor had rapid success in developing products in that field that took the plaintiff nearly two decades to develop). A review of the

Amended Complaint makes clear that Simpay's allegations fall woefully short of this pleading requirement.

Simpay's claim for relief as it relates to a violation of the DTSA and PUTSA is thus "merely a string of conclusory statements devoid of any factual basis." *See Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *6 (E.D. Pa. Nov. 23, 2010). Without more, Simpay's conclusory allegations of use, disclosure, and misappropriation cannot survive a motion to dismiss. *See Herley Industries, Inc.*, 2021 WL 229322, at *7 (finding general allegation that defendant used or disclosed trade secrets insufficient to survive a motion to dismiss). It is Simpay's burden to plead its claims, and this Court should "not assume that [Simpay] has the basis for the assertions that it makes nor [should] it attempt to fill-in where [the Complaint] is lacking." *Bioquell*, 2010 WL 4751709, at *6 (dismissing PUTSA claim). Accordingly, Simpay's DTSA and PUTSA claims against Toombs should be dismissed in their entirety and with prejudice.

## IV. CONCLUSION

The pleading standards in this jurisdiction are well-established, and Simpay should know that legal conclusions and threadbare allegations do not suffice. Facts raising a plausible inference of liability must be alleged in the Amended Complaint. Instead of amending its complaint to remedy the flaws identified in Toombs' initial motion, Simpay submits to this Court the same insufficient pleadings filed four months ago. All claims against Toombs in the Amended Complaint should therefore be dismissed with prejudice.

Respectfully submitted,

Dated: December 22, 2025

s/ *CS D'Angelo*

Christopher Scott D'Angelo (PA ID No. 28463)
Kimberly L. Sachs (PA ID No. 325989)
**MONTGOMERY MCCRACKEN**
**WALKER & RHOADS LLP**
1735 Market Street, 19th Floor
Philadelphia, PA 19109
215.772.1500
*Counsel for Defendant Timothy Toombs*

# EXHIBIT A

**From:** Josh Elsass <jelsass@simpay.net>
**Sent:** Friday, January 17, 2025 6:31 PM
**To:** Timothy Toombs <ttoombs@simpay.net>; Lazaros Kalemis <lkalemis@simpay.net>; Simpay HR Team <hrteam@simpay.net>; Megan Haarstad <mhaarstad@simpay.net>
**Subject:** Re: Resignation letter

Tim,

We want to formally acknowledge and accept your decision to resign from your position as EVP Direct Sales with Simpay. While we are saddened by your decision to leave, we understand and fully support your decision. While we appreciate your offer of a 30 days' notice we will officially accept a two-week notice, your last day will be Friday January 31st.

Thank you again for all that you accomplished while at Simpay and we all wish you the best in your next endeavors.

Sincerely,

***JOSH ELSASS***
**Chief Sales Officer**

simpay
jelsass@simpay.net
C: 810.494.3370
www.simpay.net

TOP WORK PLACES 2020 The Inquirer
BEST AND BRIGHTEST COMPANIES TO WORK FOR IN THE NATION WINNER 2020

**The values we simpayans live and breathe** – CLICK HERE TO READ
**CLICK HERE** to READ OUR BLOG -- *SMART IDEAS for SMALL BUSINESS.*
Notice of Confidentiality: This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by e-mail (by replying to this message) or telephone (noted above) and permanently delete the original and any copy of any e-mail and any printout thereof. Thank you for your cooperation with respect to this matter.

**From:** Tim Toombs <timothy.toombs@outlook.com>
**Date:** Friday, January 17, 2025 at 10:19 AM
**To:** Timothy Toombs <ttoombs@simpay.net>, Josh Elsass <jelsass@simpay.net>, Lazaros Kalemis <lkalemis@simpay.net>
**Subject:** Resignation letter
**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. -Simpay IT

[redacted]

Josh,

I am writing to formally resign from my position as EVP of Sales with Simpay. I'm willing to work through up to 30 days' notice if needed, I'm happy to accommodate if you feel it should be a different time period, I'll await your decision as this is obviously a Simpay preference. This decision was not easy, as my time here has been filled with valuable experiences and meaningful friendships that I will cherish and hope to maintain once the emotion runs through.

I want to express my heartfelt gratitude for the opportunities I've had during my time at Simpay. Working alongside you and the team has not only helped me grow professionally but has also allowed me to form friendships that I hope will last beyond my time here. I genuinely appreciate the support and encouragement I received from you and my colleagues.

As I move on to the next chapter of my career, I wish you and the entire team nothing but success. I hope to keep in touch and maintain the friendships we've built.

Thank you once again for everything.

Sincerely,

Tim Toombs

**CERTIFICATE OF SERVICE**

I, Christopher Scott D'Angelo, hereby certify that on the 22nd day of December, 2025, a true and correct copy of the foregoing Motion to Dismiss of Defendant Timothy Toombs has been filed electronically and is available for viewing and downloading from the Court's ECF system, which will send notice of such filing to all counsel of record.

Dated: December 22, 2025

s/ *CS D'Angelo*
Christopher Scott D'Angelo